1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CYNTHIA L. TORSTRUP-LANHAM,              CASE NO. 04-CV-1933 WQH (CAB)

12                              Plaintiff,    **ORDER GRANTING GEICO'S**
                                              **MOTION FOR SUMMARY**
13        vs.                                 **JUDGMENT AND DENYING**
                                              **PLAINTIFF'S MOTION FOR**
14   GOVERNMENT EMPLOYEES                     **SUMMARY JUDGMENT**
     INSURANCE COMPANY, et al.,
15
                             Defendants.
16

17

18   HAYES, Judge:

19       **I.    Introduction**

20       Before the Court are GEICO's and Plaintiff's cross-motions for summary judgment (doc. nos.

21   102 and 132).  Both parties request judgment as a matter of law as to the remaining individual and

22   class claims (counts 5-9) of Plaintiff's First Amended Complaint, which allege that GEICO violated

23   California Labor Code §§ 233 and 234, and Cal. Bus. & Prof. Code § 17200, as to both Plaintiff and

24   the putative class she seeks to represent.  The Court heard the parties' oral arguments on September

25   11, 2006, and now issues the following Order.

26       **II.   Background**

27           **A.    GEICO's Attendance and Leave Policies**

28       GEICO has an attendance policy that it refers to as "dependability."  Pursuant to this policy,

1   GEICO employees, called "associates," must maintain a 97% dependability rating, with less than 3%

2   unapproved, unscheduled absences. (Declaration of Irene Citron ("Citron Decl.") ¶ 3.)  Absences that

3   are protected by law, and absences that are arranged and approved in advance (such as scheduled

4   vacation or scheduled medical appointments), do not count against an associate's dependability. (*Id.*)

5   GEICO provides ten sick days per year to associates who have one to five years service, and fifteen

6   per year to those with more than five years of service. (*Id.* ¶ 4.)  The GEICO Associate Handbook

7   states:

8       The Health Leave Program allows you to be paid your full base pay if you have to be
        absent from work due to personal illness, injury or pregnancy.  With prior approval,
9       you may also use health leave for medical or dental appointments which cannot be
        scheduled outside regular work hours.  Prior managerial approval is required except
10      in emergencies. . . .  The Companies will comply with local or state laws concerning
        health leave and the Family and Medical Leave Act.
11
    (Declaration of Christopher J. Hayes in support of Plaintiff's Cross-Motion for Summary Judgment
12
    ("Hayes Decl."), Ex. E at 3-4.)
13
            GEICO also allows one-half of an associate's annual accrual of sick leave to be taken to care
14
    for ill family members as Family Sick Leave ("FSL"), also known as "kin care."  (Citron Decl. ¶ 4.)
15
    Accordingly, an associate with one to five years of service would receive five FSL days per year. (*Id.*)
16
    FSL time is *not* counted against an associate's dependability rating. (*Id.* ¶ 5.)  GEICO's California
17
    FSL policy states, in pertinent part:
18
        Associates must be allowed to use accrued and available sick leave in an amount not
19      less than what would be accrued in six months of employment to care for sick family
        members.  This means one-half of an associate's annual sick leave allotment, once it
20      has been accrued may be used when an employee needs time off to care for a family
        member. . . .  FSL does not affect dependability calculation.
21
    (GEICO's Notice of Lodgment in support of Motion for Summary Judgment ("GEICO's NOL"), Ex.
22
    8.)  At oral argument, counsel for GEICO confirmed that pre-approved uses of sick leave do not count
23
    against an associate's dependability rating; non-pre-approved uses of sick leave do count against
24
    dependability; and that FSL, so long as the employee has sufficient accrued sick leave to cover it, does
25
    not count against dependability, regardless of whether prior approval was obtained.
26
            In addition to sick leave and FSL, GEICO associates receive separate banks of vacation,
27
    personal leave, and floating holidays.  (Citron Decl. ¶ 6.)  GEICO's Associate Handbook defines
28
    floating holidays as "a paid holiday selected by the associate and approved by management.  Each

1  Full-time associate is credited with one Floating Holiday on the following dates: February 1, May 1,

2  August 1, and November 1." (Hayes Decl., Ex. E at 3-2.) Associates "must receive permission to take

3  a Floating Holiday and must submit a request on the Vacation and Floating Holiday Request form

4  (D160)." (*Id.*) Personal leave is available to associates for the purpose of attending to personal

5  business during working hours, and "is intended for taking care of personal business matters that

6  cannot be accomplished outside normal business hours. It should not be taken in whole day

7  increments." (*Id.* at 3-3 - 3-4.) During their first five years of service, associates accrue two weeks

8  of vacation annually during their first five years of service. (*Id.* at 3-3.)

9       If an ill associate runs out of sick days, he or she may use accrued vacation time for payment

10  purposes. (*See* Hayes Decl., Ex. I (Citron Dep. 110:8-24); Hayes Decl., Ex. K (Colletti Dep. 131:17-

11  25).) During her April 2005 deposition, GEICO regional Human Resources Director Irene Citron

12  testified as follows:

13       Q. Let's say a situation where an associate is off for a couple of days because of his
         or her own illness and exhaust the accrued sick leave for the first half of the first day
14       they're off. Then would it switch over to accrued vacation time to pay for that sick
         time off?
15       A. They can.
         Q. So vacation time can be used in place of accrued sick time if it's exhausted?
16       A. Right. If the associate chooses to use that as a means to not impact their paycheck,
         sure.
17       Q. It's a way they can still get paid while they're absent from work during the time
         that they're sick?
18       A. Right.
         Q. Is it required that they exhaust accrued sick time first before they can switch into
19       accrued vacation time?
         A. Yeah. We do have them exhaust any sick leave that they have first because the
20       health leave is for that particular purpose. And, you know, it is to their benefit to do
         so because accrued vacation, should they leave the company, is actually paid out to
21       them at the time, whereas sick leave is not.

22  (Citron Dep. 110:1-24.) Likewise, GEICO regional Human Resources Manager Marlyn Colletti

23  testified: "If an associate exhausts all their sick leave or health leave accrual, they could then use

24  vacation and personal leave accrual to be paid for payment purposes. . . . But it's separate leave . .

25  . that's just for payment purposes." (Colletti Dep. 131:17-25.) Moreover, GEICO's Health Leave

26  policy instructs supervisors that although an associate with insufficient sick days may use accrued

27  vacation or personal leave, the two types of leave must be separately recorded on the time entry sheet.

28  (*See* Pl.'s Ex. F at 2.)

1        **B.      Plaintiff's Employment at GEICO**

2        On February 10, 2002, GEICO hired Plaintiff as a service counselor.  (GEICO's NOL, Ex. 9

3   (Torstrup-Lanham Dep. 36:11-14).)  Her job involved being on the phone in a customer service role.

4   (*Id.* 48:9-16.)  In March of 2002, soon after learning she was pregnant, Plaintiff met with GEICO's

5   leave counseling administrator, Patty Ewing.  (Torstrup-Lanham Dep. 54:8-14, 56:3-6).)  Plaintiff

6   began her pregnancy leave on June 17, 2002.  (*Id.* 82:5-15; GEICO's NOL, Ex. 10.)  While on

7   pregnancy leave, Plaintiff exhausted all of her accrued leave time, including sick leave, vacation and

8   floating holiday time.  (Citron Decl. ¶ 3.)[1]  Plaintiff did not have a bank of personal leave time.  (*Id.*)

9        On October 22, 2002, Plaintiff returned to work from pregnancy leave.  (Declaration of Darrell

10  Barclay in support of Def.'s Mot. for Summary Judgment ("Barclay Decl.") ¶ 2; Torstrup-Lanham

11  Dep. 68:9-10.)  On October 26 and 28, 2002, during her first pay period back at work, Plaintiff missed

12  work because her baby was sick.  (Torstrup-Lanham Dep. 69:6-8; Barclay Decl. ¶ 3.)  At this time,

13  having just returned from a leave during which she exhausted her sick leave, vacation and floating

14  holiday banks, Plaintiff had only accrued 2.98 hours of sick leave, 2.98 hours of vacation, and 7.75

15  hours of floating holiday time.  (Barclay Decl. ¶ 4.)  Because the October absences were for the

16  purpose of caring for a sick family member, pursuant to GEICO's FSL policy, Plaintiff was entitled

17  to have one half of her accrued sick leave credited as "kin care," which does not count against an

18  associate's dependability rating.  (*Id.*)  Nevertheless, on October 26, 2002, Plaintiff's supervisor,

19  Darrell Barclay, applied the entire 2.98 hours of accrued sick leave as "kin care."  (*Id.*)  Barclay

20  designated the remainder of the 7.75 hour day as 2.98 hours of vacation, and 1.79 hours of leave

21  without pay.  (*Id.* ¶ 5.)  Barclay declares: "I designated vacation so that she would be compensated

22  for the time she missed.  If it had not been designated that way, she would have been off without pay."

23  (*Id.* ¶ 5.)  For the October 28 absence, Barclay designated a Floating Holiday so that Plaintiff could

24  _____

25  [1]Under the heading "Paid or Unpaid Leave," the GEICO Associate Handbook provides that "[a]n associate who is taking leave because of the associate's own health condition or the serious
26  health condition of a family member must use all paid vacation, floating holidays, personal leave (if accrued), or sick leave prior to being eligible for unpaid leave."  (Hayes Decl., Ex. E at 3-9.)  Under
27  the heading "Prenatal Care," the Handbook states that "[a]n associate taking leave for the birth of a child will use sick leave for physical recovery following child birth (six to eight weeks is typically
28  allowed depending on the type of delivery).  If the associate wishes to take additional time, she must use paid vacation, floating holidays, or personal leave (if accrued) prior to going on an unpaid leave of absence job for the remainder of the 12 weeks."  (*Id.*)

1  receive pay during her absence.  (*Id.*)  Thus, on October 26, 2002, Plaintiff had 4.77 hours counted

2  against her dependability rating (7.75 hours minus the 2.98 of sick leave applied as FSL); and on

3  October 28, 2002, Plaintiff had 7.75 hours counted against her dependability rating.  (GEICO's NOL,

4  Ex. 5 (Barclay Dep. 151:12-22).)

5        Plaintiff then missed work again on November 5 and 6, 2002, which she attributed to her

6  experiencing flu or cold symptoms.  (Barclay Decl. ¶ 7; Torstrup-Lanham Dep. 119:21-120:2.)  In

7  response to these absences, Barclay counseled Plaintiff regarding the fact that her dependability had

8  fallen below the company standard, and advised her that if she missed more work, she would be

9  subject to disciplinary action up to and including termination.  (Barclay Decl. ¶ 7; Torstrup-Lanham

10  Dep.120:24-121:6.)  Upon being late to work on January 1, 2003, Plaintiff was given a final warning

11  regarding her dependability, and was advised that she was subject to termination.  (Barclay Decl. ¶

12  8; Torstrup-Lanham Dep. 121:25-122:8.)  On January 24, 25, and 27, 2003, Plaintiff called in sick.

13  (Barclay Decl. ¶ 9.)  Barclay then recommended to his manager that Plaintiff be terminated due to her

14  low dependability rating.  (*Id.* ¶ 10.)  Plaintiff was then terminated due to her low dependability rating.

15  (GEICO's NOL, Ex. 3 (Colletti Dep. 29:15-21).)

16        **III.    Legal Standard**

17        Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where

18  the moving party demonstrates the absence of a genuine issue of material fact and entitlement to

19  judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

20  322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome

21  of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact

22  is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

23  party." *Id.*

24        A party seeking summary judgment always bears the initial burden of establishing the absence

25  of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving party may meet this burden

26  in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's

27  case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish

28  an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.*

1   at 322-23.  If the moving party fails to discharge this initial burden, summary judgment must be denied

2   and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398

3   U.S. 144, 159-60 (1970).

4          If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary

5   judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."

6   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*,

7   477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's

8   position is not sufficient.").  Rather, the nonmoving party must "go beyond the pleadings and by her

9   own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

10  specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (quoting Fed.

11  R. Civ. P. 56(e)) (internal quotations omitted).

12         In ruling on a motion for summary judgment, "[t]he district court may limit its review to the

13  documents submitted for purposes of summary judgment and those parts of the record specifically

14  referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.

15  2001).  Therefore, the Court is not obligated to "scour the record in search of a genuine issue of triable

16  fact."  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55

17  F.3d 247, 251 (7th Cir. 1995)).  The court must view all inferences drawn from the underlying facts

18  in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587.  "Credibility

19  determinations [and] the weighing of evidence . . . are jury functions, not those of a judge, [when] he

20  is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

21         When parties submit cross-motions for summary judgment on the same claim or issue, each

22  motion must be considered on its own merits and analyzed under Rule 56.  *See Fair Housing Council*

23  *of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  The court must

24  consider the appropriate evidentiary material identified and submitted in support of both motions, and

25  in opposition to both motions, before ruling on the motions.  *Id.*  That both parties assert that no

26  genuine issues of material fact exist does not vitiate the court's responsibility to determine whether

27  disputed issues of material fact are present.  *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606

28  (9th Cir. 1978).

1    **IV.    Discussion**

2    California Labor Code § 233(a) provides as follows:

3    Any employer who provides sick leave for employees shall permit an employee to use
     in any calendar year the employee's accrued and available sick leave entitlement, in
4    an amount not less than the sick leave that would be accrued during six months at the
     employee's then current rate of entitlement, to attend to an illness of a child, parent,
5    spouse, or domestic partner of the employee.  All conditions and restrictions placed by
     the employer upon the use by an employee of sick leave also shall apply to the use by
6    an employee of sick leave to attend to an illness of his or her child, parent, spouse, or
     domestic partner.  This section does not extend the maximum period of leave to which
7    an employee is entitled under Section 1945.2 of the Government Code or under the
     federal Family and Medical Leave Act of 1993 (29 U.S.C. Sec. 2606 et seq.),
8    regardless of whether the employee receives sick leave compensation during that leave.

9    Cal. Lab. Code § 233(a).

10   Under section 234 of the Labor Code, "[a]n employer absence control policy that counts sick

11   leave taken pursuant to Section 233 as an absence that may lead to or result in discipline, discharge,

12   demotion, or suspension is a per se violation of Section 233.  An employee working under this policy

13   is entitled to bring appropriate legal and equitable relief pursuant to Section 233."  Cal. Lab. Code §

14   234.  Section 233(b)(4) of the Labor Code defines sick leave as follows:

15   "Sick leave" means accrued increments of compensated time provided by an employer
     to an employee as a benefit of the employment for use by the employee during an
16   absence from the employment for any of the following reasons:
     (A) The employee is physically or mentally unable to perform his or her duties due to
17   illness, injury, or a medical condition of the employee.
     (B) The absence is for the purpose of obtaining professional diagnosis or treatment for
18   a medical condition of the employee.
     (C) The absence is for other medical reasons of the employee, such as pregnancy or
19   obtaining a physical examination.

20   Cal. Lab. Code § 233(b)(4).

21   Thus, if an employer provides its employees with sick leave, half of an employee's accrued

22   sick leave may be used to attend to an ill family member without subjecting the employee to

23   discipline.  *See* Cal. Lab. Code § 233(a).  "Sick leave" means accrued leave provided by the employer

24   for specific, medically-related purposes.  *See* Cal. Lab. Code § 233(b)(4).  An employee may sue his

25   or her employer if the employer has an absence policy that counts sick leave taken to attend to ill

26   family members under section 233 against the employee.  *See* Cal. Lab. Code § 234.

27   In the instant matter, Plaintiff contends that "*any* paid leave, regardless of the label put on it

28   by the employer (*e.g.*, 'vacation,' 'holiday,' or 'personal' *etc.*), that an employee can use to care for

1  her or his own illness, is 'sick leave' subject to Section 233." (Pl.'s Opp. at 5 (emphasis in original).)

2  Plaintiff cites to a May 21, 2003 California Division of Labor Standards Enforcement ("DLSE")

3  Opinion Letter responding to an employer's question concerning the application of section 233 to a

4  paid-time-off ("PTO") program that, unlike GEICO's leave policies, provided employees with an

5  undifferentiated block of PTO days, making no distinctions between vacation, sick time, or other types

6  of leave. (Hayes Decl., Ex. Q.) Under the employer's program, the DLSE noted, "there [was] no

7  quantitative measure for determining what percentage of the time taken off would be for vacation and

8  what would be allocated to sick time." (*Id.*) Because none of the undifferentiated PTO was

9  specifically tied to any event, the DLSE concluded that

10     the whole of the time is subject to the strictures of Labor Code § 227.3. In addition,
       since the time can also be used for purposes of sick leave, the time is also subject to
11     the provisions of Labor Code § 233. Since there is no quantitative limit set by the
       employer on the amount of the time which may be used for sick leave, we must assume
12     that all of the time could possibly be used for sick leave. Indeed, all of the time could
       be used as vacation, as well.

13  (*Id.*)[2]

14

15      As GEICO points out, however, unlike the employer in response to whom the DLSE addressed

16  its Opinion Letter, GEICO does not give its employees an undifferentiated block of PTO, but has its

17  employees accrue separate banks of sick leave, vacation, personal leave, and floating holidays.

18  Nevertheless, Plaintiff argues that the operative question is what a GEICO associate can actually use

19  a given form of paid leave for, rather than the label GEICO affixes to it. Plaintiff argues that because

20  an associate *can* use vacation time (as well as floating holidays and personal leave) in order to be paid

21  when ill, vacation time *is*, by operation of law, sick leave within the meaning of section 233(b)(4).

22  Consequently, Plaintifff contends, associates should be able to use half of all of their available paid

23  leave–regardless of whatever "leave bank" it comes from–for FSL. According to Plaintiff, despite

24  GEICO's use of separate leave banks, accrual rates and other policies for different types of leave, the

25  company is exalting form over substance, and is, in essence, administering an undifferentiated PTO

26  policy akin to that addressed in the cited-to DLSE Opinion Letter.

27      In response, GEICO points out the absence of case law supporting Plaintiff's argument, and

28      [2]California Labor Code § 227.3 is the provision that makes vested paid vacation time due and
    payable as wages upon an employee's termination, unlike sick leave.

1  argues that, under the plain meaning of section 233(b)(4), "sick leave" is an accrued bank of time

2  specifically set aside for sickness-related absences. (GEICO's Mem. in Supp. of Mot. for Summ. J.

3  at 9.) In addition, GEICO emphasizes the different treatment which vacation leave receives under Cal.

4  Lab. Code § 227.3, pursuant to which accrued vacation leave is a vested property right payable upon

5  termination, whereas sick leave is not. (*Id.* at 10); *see Newmarker v. Regents of the U. of Cal.*, 160

6  Cal. App. 2d 640, 647 (1958) (in contrast to vacation pay, "[t]here is no vested right to [sick leave]

7  compensation until the happening of the contingency," i.e., sickness) (quoting *Adams v. City & County*

8  *of San Francisco*, 94 Cal. App. 2d 586, 597 (1949). The two types of leave are plainly not

9  interchangeable, and GEICO's leave policies constitute more than mere nomenclature. The Court

10  declines to undertake the expansive interpretation of section 233(b)(4) urged by Plaintiff without any

11  legal support.

12  　　　Furthermore, GEICO's FSL policy complies with California law by allowing one-half of an

13  associate's annual accrual of sick leave to be taken to care for ill family members, without any effect

14  on the associate's dependability calculation. The fact that the California FSL policy is not set forth

15  in GEICO's nationwide Associate Handbook–which specifically states that GEICO "will comply with

16  local or state laws concerning health leave" (Pl.'s Ex. E at 3-4)–does not create a genuine issue of

17  material fact. Nor does a genuine issue of material fact exist as to whether GEICO denied Plaintiff

18  the FSL time to which she was entitled. On October 26, 2002, Plaintiff's entire amount of accrued

19  sick leave (2.98 hours) was applied as protected FSL time, which is more than the one half to which

20  she was entitled by law. The remainder of Plaintiff's absences were unprotected, and GEICO did not

21  violate California law in terminating her due to her low dependability rating.

22  　　　Having considered the appropriate evidentiary material identified and submitted in support of

23  both motions, and in opposition to both motions, the Court concludes that Plaintiff's individual and

24  class claims brought pursuant to Cal. Labor Code §§ 233-234 (fifth, sixth, seventh, and eighth causes

25  of action in First Amended Complaint) fail as a matter of law. Plaintiff's ninth cause of action under

26  Cal. Bus. & Prof. Code § 17200, which is dependent upon her Cal. Labor Code §§ 233-234 claims,

27  fails, as well.

28  //

- 9 -                                    04cv1933

1

## V. Conclusion

2        For the foregoing reasons, the Court **GRANTS** GEICO's Motion for Summary Judgment (doc.

3 no. 102), and **DENIES** Plaintiff's Cross-Motion for Summary Judgment (doc. no. 132).  The Clerk

4 is directed to enter judgment in favor of Defendant.

5        **IT IS SO ORDERED**.

6 DATED:  September 26, 2006

7

                            **WILLIAM Q. HAYES**

8                             United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

         04cv1933